# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM STEPHEN SCHOBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 17-1511 |
| ) | |
| LEO BERNARD SCHOBER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Cynthia Reed Eddy, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court is a Motion to Dismiss (ECF No. 15) filed on behalf of Defendant Leo Schober. For the reasons stated herein, the motion will be granted and the Complaint will be dismissed with prejudice.

### II. STATEMENT OF FACTS

Plaintiff William Stephen Schober, appearing pro se, instituted this action on November 20, 2017 by filing a motion for leave to proceed in forma pauperis (ECF No. 1), which the court granted (ECF No. 2), whereupon he filed a Complaint on November 22, 2017 (ECF No. 3). He then filed an Amended Complaint on November 27, 2017 (ECF No. 5), the operative pleading.

In the Amended Complaint[1] plaintiff alleges:

> Leo Bernard Schober received my furniture and other movable property stolen from my house at 3460 Bismark St. Pgh PA 15213, by Ralph George Lyle. This caused the city to tear down the house as an abandoned house while I was working overseas. Leo Bernard Schober received the stolen furniture and possessions from Ralph George Lyle.

---

[1] Plaintiff has also filed "Exhibits to the Complaint (ECF No. 11) which the Court struck by order dated February 13, 2018 (ECF No. 12), instructing Plaintiff to file the documents as part of a Second Amended Complaint. Plaintiff did not do so.

1

(ECF No. 5 at 5). Plaintiff claims he is entitled to relief as follows:

> Leo Bernard Schober knowingly received my stolen furniture: $25,000 and other movable property (clothes, books, curtains, etc.): $51,000; causing City of Pittsburgh to deem my house abandoned and be torn down: $50,000. Everything of sentimental value of mine was stolen. Homelessness and loss of all my possessions caused me pain and suffering $20,000.

(ECF No. 5 at 6).

Plaintiff alleges we have diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the claims involve more than $75,000, exclusive of interest and costs. Although defendant agrees that there is complete diversity between the parties, he disputes whether the amount in controversy exceeds $75,000. Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

### III. DISCUSSION

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991). The court must resolve motions over subject matter jurisdiction before proceeding to a disposition of the merits. *Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n,* 554 F.2d 1254, 1256 (3d Cir.1977).

As there is no issue in this case that the adverse parties are citizens of different states, the only issue is whether the amount in controversy meets the jurisdictional threshold. In determining whether the party asserting the jurisdiction of the court has met the amount in controversy requirement, "the sum claimed by the [party asserting the jurisdiction] controls if the claim is apparently made in good faith." *State Farm Mut. Auto. Ins. Co. v. Powell*, 87 F.3d 93, 96 (3d Cir. 1996) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288, 58 S.Ct.

2

586, 82 L.Ed. 845 (1938)). If, however, the amount in controversy is challenged, the party asserting jurisdiction must show that the jurisdictional requirement has been met. *See Rueda v. Amerifirst Bank*, Civ. A. No. 90–3986, 1991 WL 25565 * 2 (E.D. Pa. Feb. 25, 1991) (citing *Burns v. Mass. Mut. Life Ins. Co*., 820 F.2d 246 (8th Cir. 1987)); *Davis v. Shultz*, 453 F.2d 497 (3d Cir.1971); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971).

A challenge to the jurisdiction of the court may be facial or factual. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir.1977)). Whereas a facial challenge to subject matter jurisdiction requires the court to accept as true the allegations contained in the complaint, including the amount in controversy, a factual challenge permits the court significantly more leeway. In the latter, unlike the former, the party asserting the existence of jurisdiction is not entitled to a presumption that the well-pleaded allegations in the complaint are in fact true. Therefore, in a factual challenge, the court may consider evidence outside the pleadings and weigh conflicting testimony. *Id.* (citations omitted); *see also Mortensen,* 549 F.2d at 891 (stating that in factual challenge "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). In this case, Defendant has challenged Plaintiff's allegation in the complaint that the amount of damages asserted by him meets the amount in controversy requirement for federal jurisdiction. Therefore, Plaintiff bears the burden of providing evidence which shows that his damages in fact exceed $75,000, exclusive of interest and costs. *See Mortensen*, 549 F.2d at 891.

In determining whether the claim in fact exceeds $75,000, exclusive of interests and costs, the court must assess "the value of the rights being litigated," *Angus v. Shiley Inc*., 989

F.2d 142, 146 (3d Cir. 1993), or "the value of the object of the litigation," *Hunt v. Wash. State Apple Advers. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also* 14B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure 77 (3d ed. 1998) ("It is well-settled by numerous judicial decisions by the Supreme Court, the court of appeals, and countless district courts that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit.").

In support of his motion, Defendant has submitted several exhibits. In response to Defendant's contentions, which we will address below, Plaintiff has not objected to or contradicted those factual submissions, except in very limited circumstances.

It is uncontroverted that Plaintiff purchased a one-bedroom house at 3460 Bismark Street, Pittsburgh, PA 15213 for $4,000 on November 17, 1995. He then moved to Asia to live permanently for over twenty years, where he taught school. He moved back to the United States on January 1, 2017. In 2008 Plaintiff attempted to sell his house for $4,000 to Ralph Lyle, and after the sale fell through, Plaintiff accuses Lyle of defaulting on the sale. Defendant has attached to his motion public records reflecting that Plaintiff was delinquent in paying property taxes from as early as June 2000 and continuing through July 2016. He was charged in Allegheny County with accumulation of rubbish or garbage, as well as overgrown weeds and grass, in 2009; Plainitiff did not appear for his summary trial and the charges were dismissed. The home was demolished on April 23, 2012, apparently after a meth lab was built in the home. It is unclear when the contents of the house were removed, if ever, prior to the demolition but we can assume that if they were moved it occurred before the demolition. Plaintiff himself refers to the meth lab as being the cause of the demolition in an email dated December 22, 2012. (ECF

No. 16-10 at 1). He stated "I certainly don't want a former meth lab, empty lot. Ralph can have it if he ever gets out of jail." (ECF No. 16-10).

On November 4, 2015, the City of Pittsburgh sent letter to Plaintiff as property owner of the vacant lot, in which the collection specialist notes that "you have not responded to the letter sent to you by our Bureau of Building Inspection" and charging him with demolition costs in an amount of $2,800. Real estate tax records from Allegheny County currently list the lot as vacant land, with $0 building value and $600 land value. In an email to his sister dated October 15, 2015, mistakenly thinking his house was for sale when it was in reality misidentified, Plaintiff admits he "was told it was torn dawn [sic]. . . I wonder if the city repossessed it for back taxes." (ECF No. 16-13 at 1).

On January 6, 2017, after returning to the United States, Plaintiff filed a report with the City of Pittsburgh Bureau of Police asserting "theft by unlawful taking or disposition – movable item" beginning on December 1, 2015 through the date of the report (listing the property as a complete livingroom set valued at $10,000, complete dining room set valued at $10,000, kitchen utensils and microwave valued at $5,000" totalling $25,000. There is nothing in the record before us as to an investigation into or disposition of that report.

On November 29, 2017, two days after filing the Amended Complaint in the above-encaptioned action, Plaintiff filed a complaint in Magisterial Court against brothers Ralph Lyle, Chris Lyle and Don Lyle and against Frank and Keith Olszewski, all residents of Pennsylvania. Plaintiff's brother, Defendant herein and a resident of Florida, is not named as a defendant. Plaintiff alleged in the Magisterial Complaint that Ralph Lyle and the other defendants stole the contents of his house at 3460 Bismark St. and Plaintiff asked for a judgment against the multiple defendants of $12,000. Plaintiff's Civil Complaint therein alleges, under penalty of perjury:

5

> I received a Facebook message from Don Lyle December 24, 2015 telling me that Ralph Lyle, his brother, had given all my furniture and movable property to Leo Schober, my brother. This was my first discovery, 12/ 24 / 2015, of my missing furniture and movable property from my house at 3460 Bismark St. Pgh PA 15213. I returned to the U.S.A January 1, 2016 from 20 years overseas . Shortly after my return to the U.S.A. I saw, for the first time, my house at 3460 Bismark St. Pgh PA 15213, torn down. Ralph Lyle had taken my furniture and all my movable property out of my house and stored them in Sligo, PA without my knowledge, permission or consent. Ralph Lyle later gave my furniture to Leo Schober, my brother, without my knowledge, consent or permission. Leo Schober now lives in North Port, Florida. I had paid Don Lyle $200 to watch my furniture and possessions and movable property in Sligo, PA while I was living overseas after learning they were taken out of my house and stored in Sligo, PA by Ralph Lyle while I was overseas. Ralph Ly1e and Chris Lyle gutted my house at 3460 Bismark St. Pgh PA 15213 causing the City of Pittsburgh to tear it down cause there was no furniture or possessions in the house and the house was gutted without my knowledge, permission or consent. Frank and Keith Olszewski allowed, assisted and abetted the gutting of my house. Ralph Lyle defaulted on the sale of my house to him.

We note that Plaintiff's Magisterial Complaint further alleges that the lack of contents in the house caused the City of Pittsburgh to deem the house abandoned and to consequently tear it down; this contradicts Plaintiff's original claim that the meth lab was the reason the house was demolished. The Magisterial Complaint was heard by Magisterial Judge on January 30, 2018. That Complaint was dismissed without prejudice on February 5, 2018.

Defendant's motion challenges this court's very power to hear this case based on Plaintiff's inability to establish diversity jurisdiction. Plaintiff values the contents of the house at $76,000 ($25,000 in furniture and $51,000 in other movable property) and asks for relief from pain and suffering in the sum of $20,000. Defendant argues that the Plaintiff's claim that the house and its contents was worth $76,000 defies logic, given depreciation over the time while the contents sat in an abandoned house. The one-bedroom house was purchased for $4,000 in 1995, Plaintiff by his own admission attempted to sell it to Ralph Lyle for $4,000 in 2008, Plaintiff abandoned the property—and its contents -- for twenty years, and it was demolished in

2012.  Plaintiff says the removal of the items entitles him to recover the value of the house, yet represented in his uncontroverted emails that he knew the house had been demolished due to the meth lab, and speculated further in an email that tax delinquency may have contributed to the decision to demolish it.  He cannot now claim that the value of the house is part of his claimed damages because by his own admission, and based upon the record, common sense and logic, there is no causation between the actions of Defendant and his alleged injury.

As to the value of the contents, Plaintiff sued others in the Magisterial Court for stealing the exact same contents he is alleging Defendant received, in amount claimed therein as $12,000.  It was not until he filed the federal lawsuit, wherein diversity jurisdiction and the amount in controversy was explained in the forms provided by the Clerk of Court, that Plaintiff upped the amount in controversy from $12,000.  This reflects bad faith.  In his Response (ECF No. 24) Plaintiff does not respond to Defendant's argument that the amount claimed is inconsistent with his prior demand for $12,000.  He simply attempts to add detail to the list of items that were once in the house, emphasizing their sentimental value.  Again, common sense and logic contribute to our conclusion.

The court cannot find, based on the record before it, that the amount in controversy exceeds the $75,000 threshold required by 28 U.S.C. § 1332.  *Douglas v. Joseph*, No. 1:CV-13-1136, 2016 WL 561944, at *4 (M.D. Pa. Feb. 12, 2016), aff'd, 656 F. App'x 602 (3d Cir. 2016). "[E]stimations of the amounts recoverable must be realistic." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004). When determining whether a complaint premised on diversity jurisdiction meets the amount in controversy, "[t]he inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Id.* "The authority which the [diversity] statute

vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment." *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

The amount-in-controversy requirement "ensure[s] that diversity jurisdiction does not flood the federal courts with minor disputes." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 2617, 162 L.Ed.2d 502 (2005).  This is a minor dispute.

Since Plaintiff has not sufficiently plead subject matter jurisdiction, this Court therefore need not discuss Defendants' motion to dismiss for failure to state a claim at this time.[2] Leave to amend will be denied under Fed. R. Civ. P. 15(a), Plaintiff having been given an opportunity to present evidence by means of his response to the Motion to dismiss.  Any amendment would be futile.

### IV. CONCLUSION

For all the above stated reasons, the court finds that the plaintiff has failed to sustain its burden of proving that this claim meets the required jurisdictional amount.

AND NOW, to-wit, this 11th day of June, 2018, it is hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 15) is GRANTED.  The Amended Complaint is dismissed with prejudice.  The Clerk of Court is directed to mark this case as CLOSED.

/s/ *Cynthia Reed Eddy*  
Cynthia Reed Eddy  
United States Magistrate Judge

Cc:     record counsel via CM-ECF

       WILLIAM STEPHEN SCHOBER  
       4754 Liberty Ave., Room D2  
       Pittsburgh, PA 15224

---

[2] Plaintiff's action is also barred by the statute of limitations of two years, 42 Pa. Cons. Stat. Ann. § 2254. Not only has Plaintiff lacked diligence, but Ralph Lyle has stated he gave the house contents to Defendant (which Defendant denies) at his residence in Pennsylvania.  The uncontroverted evidence shows Defendant moved to Florida in 2009.